UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **BARBARA D. HENNIGAN** | : | **DOCKET NO. 06-0553** |
| **VS.** | : | **JUDGE TRIMBLE** |
| **JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY** | : | **MAGISTRATE JUDGE WILSON** |

**REPORT AND RECOMMENDATION**

Before the court is plaintiff's petition for review of the Commissioner's denial of social security benefits. This matter has been referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), the undersigned finds that the Commissioner's decision is not supported by substantial evidence in the record and is not consistent with relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

**BACKGROUND**

On December 13, 2003, Barbara G. Hennigan filed a claim for disability insurance benefits alleging disability due to autoimmune hemolytic anemia, pseudotumor cerebri, hypertension and obesity. (Tr. 37-40). Hennigan also filed an application for Supplemental Security Income benefits that was not included in the transcript filed with the court (Tr. 2), yet was identified by the Commissioner as having been filed August 20, 2003; Hennigan has a protected filing date of August 1, 2003 (Tr. 63). Her application was denied on February 9, 2004

at the initial stage of the administrative process. (Tr. 19-23). Thereafter, Hennigan requested and received a June 10, 2005 hearing before an Administrative Law Judge ("ALJ"). (Tr. 316-347). Also appearing and testifying were Hennigan's mother, Doris Ann Stein (Tr. 332-335) and Vocational Expert Herman Litt (Tr. 335-342). However, by decision dated August 25, 2005, the ALJ found that Hennigan was not disabled under the Act, finding at Step Five of the sequential evaluation process that she retained the residual functional capacity ("RFC") to perform light work that is available in significant numbers in the national economy, and that therefore she is not disabled at any time relevant to this decision. (Tr. 10-18). Hennigan appealed the ALJ's adverse decision to the Appeals Council on September 15, 2005 (Tr. 168-315), noting that updated medical records covering the period from September 8, 2004 through June 27, 2005 had been submitted to the ALJ on July 18, 2005 (Tr. 168), but that the updated medical evidence was not made part of the record nor mentioned in the August 25, 2005 decision. Hennigan asked again that the updated medical evidence be made a part of the record, and included further new and updated medical evidence for the period from August 8, 2005 through September 8, 2005. (Tr. 168-169). On February 24, 2006, the Appeals Council concluded that there was no reason to review the ALJ decision, and denied the request for review. Therefore the ALJ's decision became the final decision of the Commissioner. (Tr. 6-9).

## STANDARD OF REVIEW

The court's review of the ultimate decision of the Commissioner is limited to determining whether the administrative decision is supported by substantial evidence and whether the decision is free of legal error. *Dellolio v. Heckler*, 705 F.2d 123 (5th Cir. 1993). Where the Commissioner's decision is supported by substantial evidence, the findings therein are

conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Brown*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401.

When appearing before the ALJ, the claimant had the burden of proof to establish a medically determinable physical or mental impairment that prevented her from engaging in any substantial gainful activity for at least twelve consecutive months. 42 U.S.C. § 1382c(a)(A). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *Johnson v. Bowen,* 864 F.2d 340, 343-344 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Secretary. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

## LAW AND ANALYSIS

The Commissioner evaluates disability claims under the Social Security Act through a five-step process: (1) Is the claimant currently working and engaged in substantial gainful activity? (2) Can the impairment or combination of impairments be classified as severe? (3) Does the impairment(s) meet or equal a listed impairment in Appendix 1 of the Commissioner's regulations? (If so, disability is automatic.) (4) Does the claimant's residual functional capacity permit her to perform past relevant work? and if not, (5) Can the claimant perform other work? 20 C.F.R. §§ 404.1520, 416.920(b)-(f). *See, also* Leggett v. Chater, 67 F.3d 558, 564n. 2 (5th Cir. 1995). When a finding of "disabled" or "not disabled" may be made

at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). The first four steps place the burden upon the claimant. At the fifth step, the burden shifts to the Commissioner to establish that the claimant can perform other work. If the Commissioner meets this burden, then the claimant must then prove that she cannot in fact perform the work suggested. *See*, *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Falco v. Shalala*, 27 F.3d 160 (5th Cir. 1994); *Muse v. Sullivan*, 925 F.2d 785 (5th Cir. 1991).

On March 28, 2006, Hennigan sought judicial review of the denial of benefits. She alleges the following errors:

(1) the ALJ failed to make a separate finding that the claimant can maintain employment for a significant period of time;

(2) the ALJ posed and relied on a defective hypothetical question; and

(3) the Commissioner did not carry her burden at Step Five.

The ALJ found at Step Two of the sequential evaluation process that the claimant has medically determinable severe impairments including autoimmune hemolytic anemia, history of pseudotumor cerebri, hypertension and obesity, and found that these impairments are severe "since they impose more than a slight limitation on her ability to perform basic work related activities." (Tr. 14) However, at Step Three the ALJ determined that the effects of the claimant's obesity taken together with her other impairments did not meet or medically equal any of the impairments listed in 20 C.F.R. Ch. 111, Pt. 404, Subpt. P, App. 1, and that no physicians had identified functional limitations resulting from clinical deficits. (Tr. 14-15).

The ALJ determined that Hennigan's assertions regarding the effects of her impairments and her functional limitations was unsupported by objective clinical evidence (Tr. 16), that her

4

testimony was only partially credible, and that her assertions about her impairments were not fully consistent with the record considered as a whole. (Tr. 17).  A state medical consultant reviewed Hennigan's medical records and concluded that she had exertional limitations of lifting 20 pounds occasionally, lifting/carrying 10 pounds frequently, standing, walking or sitting for 6 hours out of an 8-hour workday, and unlimited pushing and pulling.  (Tr. 17-18, 159-160).  This is consistent with the ALJ's determination that Hennigan had a residual functional capacity ("RFC") for the equivalent of light work.  The ALJ further solicited a determination at the June 10, 2005 hearing from the vocational expert, regarding whether Hennigan could continue to perform her relevant past work as a cook or laborer, given her RFC for light work, with a non-exertional limitation.  The VE determined that Hennigan could not return to relevant past work.

The ALJ's determination also included a finding that Hennigan had "the capacity to understand simple instructions and perform simple tasks, and perform activities requiring concentration" (Tr. 16), which is the equivalent of an additional, non-exertional limitation.  The record contains no evidence of any medically-determined impairment of Hennigan's mental faculties, however Hennigan testified that she was prone to headaches when her blood ran low or she had high blood pressure.  (Tr. 326).  Hennigan further testified that her memory had been problematic "since she got sick." *Id*.  The ALJ determined that Hennigan's testimony regarding her impairments was only partially credible, but appears to have considered Hennigan credible in the area of her debilitated memory, as he has treated her as having a non-exertional limitation, and used that limitation in the hypothetical he posed to the VE at the hearing.

Ordinarily, if a claimant suffers only from an exertional limitation, the ALJ relies on the Medical-Vocational Guidelines commonly referred to as "the Grids" to determine whether or not

5

there is other work available in the national economy that the claimant can perform considering her RFC.[1] The ALJ may also rely on the Grids where a claimant has a non-exertional impairment that does not significantly affect her RFC. 20 C.F.R. § 404.1569 & Subpt. P, App. 2; *Selders v. Sullivan*, 914 F.2d 614 (5th Cir. 1990) (citing *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987)). The guidelines may not be used, however, if the claimant suffers from a non-exertional impairment that affects her RFC. In that case, the Secretary must produce expert vocational testimony or other similar evidence to establish that jobs exist in the national economy that the applicant can perform. *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986); *Anderson v. Sullivan*, 887 F.2d 630 (5th Cir. 1989)

We must assume, therefore, that the ALJ concluded that Hennigan was subject to a non-exertional limitation despite his failure to specifically describe it as such, because instead of determining whether or not she was disabled by using the Grids alone, as he would be able to if she fit squarely within the Grids, he sought additional guidance from a vocational expert as required. *Vaughn v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995).

The Fifth Circuit has consistently held that once the ALJ determines that a claimant suffers from a non-exertional impairment that prevents the claimant from performing her past relevant work and the full range of other available work, the Secretary must produce "expert vocational testimony or other similar evidence" to establish that jobs exist in the national economy that the applicant can perform." *Scott v. Shalala*, 30 F.3d 33 (5th Cir. 1994). The

---

[1] The Grids consist of three tables (for sedentary, light, and medium work) which direct conclusions of disability or non-disability based upon claimant's age, education, and previous work experience. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 201-03 (2000); *Zeno v. Barnhart*, 2005 WL 588223 (E.D. Tex. 2005) (unpub'd); *Jones v. Heckler*, 702 F.2d 616, 622 (5th Cir. 1983).

dictionary of occupational titles is not "similar evidence." *Vaughan v. Shalala*, 58 F. 3d 129 (5th Cir. 1995). Where non-exertional limitations precluded the full range of work it was proper for the ALJ to consider the framework of the medical-vocational guidelines together with vocational expert testimony to determine whether or not the claimant is disabled. *Id.*

The ALJ solicited Step Five testimony from the VE giving the following hypothetical: "Assume a younger individual, 33 years old at the time of the alleged disability, high school education, prior unskilled work as a laborer and semi-skilled work as a cook/cashier, with the ability to lift and carry 20 pounds occasionally, 10 pounds frequently, can sit, stand or walk 6 out of 8 hour day, limited climbing, push or pull unlimited, can interact with others, understand simple instructions and follow simple instructions, and can concentrate to perform simple tasks." (Tr. 339). The VE determined that with such an RFC, Hennigan could perform light, unskilled work as a food preparation worker (DOT 311.472.010), as a dishwasher (DOT 827.584.010) or as an office cleaner (DOT 323-687-014). (Tr. 17, 335-341). He identified the available jobs by referring to their Dictionary of Occupational Titles[2] numbers at the request of the ALJ.

The ALJ's decision concluded that Hennigan can successfully adjust to work other than her past relevant work, and he asserted that the VE testified that "such jobs exist[] in the hundreds and thousands in the regional and national economy." (Tr. 17). However, there is no support for the ALJ's conclusion regarding the existence of such jobs in the national economy, as he neither requested the VE's opinion as to the numbers of jobs available, nor did the Vocational

---

[2] Employment and Training Administration, U. S. Department of Labor, *Dictionary of Occupational Titles* (Fourth Edition, Revised 1991) and its companion publication, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles*, (1993).

Expert provide such information independently, and the transcript shows that the VE did not testify as the ALJ asserts. (Tr. 335- 341). Furthermore, the government agrees that there was no testimony regarding the availability in the regional or national economy of such jobs as Hennigan might be able to perform. Defendant's Response to Plaintiff's Brief, p. 8. [doc. # 10].

"[T]he ALJ bears the burden at step five to show that there are jobs in the regional or national economies that the claimant can perform with the restrictions found by the ALJ . . . [T]he ALJ 'must cite examples of occupations or jobs the individual can do and provide a statement of the incidence of such work' . . . and [must] verify that the jobs the claimant can do exist in significant numbers in the regional or national economies. All of these findings must be supported by substantial evidence."[3] In *Lafitte v. Apfel*, the Court found that as the VE had testified as to specific numbers of jobs available in the national economy, and that the regional economy's incidence of such jobs would be distributed proportionally in the same way that population is distributed in the United States, the ALJ properly found that such jobs as the plaintiff could perform based on RFC were to be found in the regional economy. Lafitte v. Apfel, 81 F. Supp. 2d 669 (W.D. La., Shreveport Div. 1999). The Secretary must produce expert vocational testimony or other similar evidence to establish that jobs exist in the national economy that the applicant can perform. *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986).

Because the VE did not testify as the ALJ asserts as to the availability and numbers of jobs in the regional and national economy, the Commissioner did not carry her burden at Step

---

[3] 2000 SSR LEXIS 6, Social Security Administration AR 00-3(10) (C. E. 2000) (quoting SSR 96-9p), on appeal of *Haddock v. Apfel*, 196 F.3d 1084 (10th Cir. 1999) – Use of Vocational Expert Testimony and the Dictionary of Occupational Titles under 20 CFR 404.1566, 416.966 – Titles II and XVI of the Social Security Act.

Five.  We necessarily find that the Commissioner's determination that Hennigan is not disabled is not supported by substantial evidence, and therefore the ALJ has failed to comply with applicable legal standards.  For this reason it is not necessary to specifically consider the effect of the claimant's other alleged errors.

It is RECOMMENDED that this matter be REVERSED and REMANDED to the Commissioner for further proceedings consistent with this opinion.

Under the provisions of 28 U.S.C. §636(b)(1)(c), the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court.  Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 30th day of May, 2007.

ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE